UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYA JONES,

        Petitioner,                              Civil No. 04-10227
                                                            Criminal No. 02-20038
v.                                                                Honorable David M. Lawson

UNITED STATES OF AMERICA,

        Respondent.
_____/

**OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE**

After having been charged in a ten-count indictment with conspiracy to commit wire and mail fraud and substantive counts of wire and mail fraud, petitioner Kenya Jones entered a guilty plea to the conspiracy count (Count I) of the indictment on May 13, 2003. On September 3, 2003, the petitioner was sentenced to 30 months in custody to be followed by three years of supervised release. Ms. Jones was ordered to pay restitution in the amount of $32,793.18. At the time of her plea and sentence, Ms. Jones was represented by Rodney O'Farrell. The petitioner did not appeal her conviction or sentence in this case. Instead on August 27, 2004, she filed a motion to vacate her sentence under 28 U.S.C. § 2255.

In the motion, Jones alleges that her Sixth Amendment right to effective assistance of counsel was violated when her attorney failed to move for and obtain a reduction in her offense level for acceptance of responsibility under the United States Sentencing Guidelines, thereby causing her net offense level to be higher than she believes it should have been; failed to file a direct appeal after Jones "expressed a desire to appeal her sentence," Petitioner's Br. at 3; and failed to secure either concurrent sentences or credit for time served on a state charge for which Jones also was sentenced. Jones also contends that the sentencing court erred in its refusal to reduce the net offense level by

three levels for acceptance of responsibility. The government has filed an answer in opposition to the motion. The Court finds that the petitioner has not shown that her attorney's performance was deficient and therefore cannot prove a Sixth Amendment violation. The Court also finds that a review of the alleged sentencing error is barred because the petitioner failed to file a direct appeal. The motion, therefore, will be denied.

I.

The petitioner was indicted on August 14, 2002. The indictment charged that Kenya Jones and two others conspired to use the Internet to place bids in on-line auctions, and upon becoming the successful bidder using bogus checks to purchase merchandise and defraud the sellers. Checks were sent via the United States mail, and the merchandise was also shipped in interstate commerce.

On December 11, 2002, a superceding indictment was filed by the grand jury. Within two weeks thereafter, attorney Rodney J. O'Farrell appeared in the case on behalf of Ms. Jones in place of a court-appointed attorney. On May 13, 2003, the petitioner signed a Rule 11 plea agreement and entered a guilty plea before this Court. The plea agreement contained a Sentencing Guidelines worksheet that anticipated a base offense level of six, an increase of an additional six levels because of the loss between $30,000 and $70,000, another two-level increase because the number of victims was between 10 and 50, an increase of two levels because sophisticated means were used to perpetrate the offense, and an anticipated reduction of three levels for acceptance of responsibility. The anticipated net offense level was 13, and because the petitioner's prior record put her in criminal history category III, the predicted sentencing guideline range was 18 to 24 months. However, the plea agreement capped the potential sentence at the midpoint of whatever guideline range the Court would determine. This agreement was fully explored on the record with the petitioner, and after the

plea hearing the matter was referred to the probation department for a presentence investigation and report.

A presentence report was prepared by a United States probation officer on July 16, 2003. The probation officer's investigation revealed the loss amount between $70,000 and $120,000, more than 50 victims, and additional criminal conduct committed by the petitioner while she was free on bond on the instant offense. The probation officer calculated a net offense level of 20, which did not include any reduction for acceptance of responsibility. The new offense level yielded a Sentencing Guideline range of 41 to 51 months.

Before the sentence hearing, attorney O'Farrell filed a memorandum challenging the probation officer's recommended Sentencing Guidelines calculation and also urging the Court to reduce the net offense level by three levels because of acceptance of responsibility. At the sentence hearing, the Court rejected the probation officer's recommendation concerning the loss amount and the number of victims, instead honoring the parties' stipulation limiting those factors. However, the Court considered a Saginaw Township Police Department report of other criminal conduct committed by the petitioner while on bond. In fact, between the date of the guilty plea and the sentencing hearing, the petitioner was charged in Saginaw County, Michigan with five counts of uttering and publishing, and one count of obtaining money by false pretenses over $1,000. The offenses occurred within the time frame of April 11 and April 24, 2003, which predated the guilty plea hearing but transpired after the petitioner was released on bond for the present offense. The essence of the new crimes was that the petitioner presented an application to a credit union to obtain an automobile loan, and the application contained false information. In addition, during a two-week period in April 2003, the petitioner opened four additional bank accounts in the Saginaw area and

initiated a check scheme to defraud the banks and credit union where she had opened new accounts. The Court found that the petitioner failed to demonstrate acceptance of responsibility within the meaning of the United States Sentencing Guidelines, and the Court declined to reduce the offense level accordingly.

During the sentencing hearing, the Court concluded that the net offense level was 16, and the sentencing guideline range applicable to this case was 27 to 33 months. The Court noted that the parties had agreed to limit the sentence to the midpoint of the guideline range, which was 30 months under the Court's calculation. After considering and rejecting requests to depart downward from the guideline range, the Court sentenced the petitioner to the maximum amount permitted by the plea agreement, which was 30 months in custody.

The petitioner did not file a direct appeal of either her conviction or sentence. On July 15, 2004, she filed a motion for reconsideration of the decision to deny an adjustment of her offense level for acceptance of responsibility, which the Court denied because it was filed out of time and lacked merit. The petitioner then filed the present motion to vacate the sentence.

II.

Turning first to the question of whether the Court erred by refusing to reduce the net offense level for acceptance of responsibility, the Court notes that this issue could have been addressed on direct appeal. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot

use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Id.* at 164-65. *Accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528.

The petitioner has not shown cause for her failure to raise the sentencing issue on direct appeal. Nor does the record demonstrate prejudice. A defendant is not entitled to a reduction of the offense level under the United States Sentencing Guidelines unless "the defendant clearly demonstrates acceptance of responsibility for [her] offense." U.S.S.G. § 3E1.1(a). The defendant has the burden of demonstrating acceptance of responsibility by a preponderance of the evidence. *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001). A defendant who commits additional crimes while free on bail will not necessarily forfeit acceptance of responsibility credit if the new crimes are unrelated to the charged offense. *United States v. Morrison*, 983 F.2d 730, 735 (6th Cir. 1993). However, a defendant who commits crimes that are "related" to the charged offense, also constituting violations of bond, may be refused an acceptance of responsibility adjustment. *United*

*States v. Walker*, 182 F.3d 485, 489-90 (6th Cir. 1999). In this case, the petitioner's new fraudulent conduct was related to the crime charged in much the same way as continued use of controlled substances is related to a charge of selling illegal drugs. *Id*. at 489; *see also United States v. Garcia*, 20 F.3d. 670, 675-76 (6th Cir. 1994) (holding that defendant's denial of drug use while free on bond warranted enhancement for obstruction of justice). The petitioner was not entitled to an adjustment for acceptance of responsibility, and therefore she cannot demonstrate a miscarriage of justice or prejudice to avoid the bar created by her failure to file a direct appeal of this issue in this case.

III.

As noted above, the petitioner contends that her attorney performed ineffectively in three areas: failing to argue for an acceptance of responsibility adjustment; failing to file a direct appeal; and failing to seek and obtain a consolidation of her sentences or credit for time served in state court. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

The petitioner's first claim of ineffective assistance of counsel is not supported by the record. Although she claims that Mr. O'Farrell did not request a downward adjustment of the offense level pursuant to USSG § 3 E1.1, the record plainly shows that Mr. O'Farrell filed a memorandum urging the Court to do exactly that, and Mr. O'Farrell argued that point on the record. As a consequence, the petitioner cannot demonstrate defective performance on the part of her attorney concerning the acceptance of responsibility issue.

Jones also contends that her attorney's performance was defective because she "expressed a desire to appeal her sentence" to Mr. O'Farrell and he did not file a notice of appeal. She also alleges that her family members requested that O'Farrell file an appeal on her behalf. Mr. O'Farrell filed an affidavit stating that neither the petitioner nor her family instructed him to file an appeal.

The petitioner has not alleged that either she or her family "specifically instruct[ed]" Mr. O'Farrell to file an appeal. Such specific instruction is required in order to trigger counsel's duty to pursue post-conviction remedies. *See Regalado v. United States*, 334 F.3d 520, 524-26 (2003) (citing *Roe v. Flores-Ortega*, 528 US 470, 477-78 (2000)). The Sixth Circuit has held that simply expressing a desire or a wish to appeal does not constitute "express instructions" to defense counsel to file an appeal. *Id.* at 525. The petitioner has not furnished any proof whatsoever, either in the form of an affidavit by her or any of her family members, that contradicts Mr. O'Farrell's affidavit alleging that no such instructions were given. Moreover, the petitioner has not suggested any valid grounds for appeal, leading the Court to believe that no such discussion ever took place.

The Court cannot find that counsel performed deficiently by not filing an appeal in this case absent explicit instructions to do so, particularly when colorable claims of error are lacking. The petitioner has failed to establish the deficient performance prong of the *Strickland* test with respect to her second claim against Mr. O'Farrell.

The petitioner's final argument is that her lawyer performed deficiently by failing to secure an order that her state sentence would run concurrently with her federal sentence, or alternatively that the time she served on her state sentence would be credited against her federal sentence. The United States Sentencing Guidelines provide that if an "undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for

the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b). According to the records in this case, the defendant was convicted of uttering and publishing in the Bay County, Michigan circuit court and sentenced on September 2, 2002 to serve 300 days in jail followed by three months of electronic monitoring. The actual time spent in jail was 175 days, which the petitioner had completed by the time of her federal guilty plea on May 13, 2003. The uttering and publishing charge arose from the petitioner's fraudulent activities which was part of the federal conspiracy to which she pleaded guilty in this case. However, by the time the petitioner was sentenced in this case on September 3, 2003, she had completed her custody term on the state charge, and therefore there was no longer any "undischarged" term of imprisonment to consider within the meaning of U.S.S.G. § 5G1.3(b). As a consequence, defense counsel's performance cannot be considered constitutionally deficient in failing to ask for concurrent sentences.

The question remains, however, whether defense counsel should have ask that petitioner's federal sentence be credited for time served on the state sentence. In his affidavit, Mr. O'Farrell stated that he did not make such a request of the Court because he assumed that the attorney general would make the determination of credit for time served in the initial instance. Indeed, 18 U.S.C. § 3585(b) prescribes the instances in which a prisoner may be credited on her present sentence with time spent in detention for other reasons. The statute itself, however, is intended to eliminate the likelihood of a prisoner serving "dead time," that is, a period of detention that does not result from *some* sentence. The statute provides that a prisoner be given credit for a period of detention "as a result of any other charge for which the defendant was arrested after the commission [of the instant offense] that has not been credited against another sentence." 18 U.S.C. § 3585(b)(2).

In this case, the petitioner claims that her lawyer should have asked for credit against the federal sentence for the time served on the uttering and publishing sentence in state court. Section 3585(b), however, provides her no help in this quest because the period of detention for which she seeks credit was already credited against another sentence: the state court sentence for uttering and publishing.

The commentary to U.S.S.G. § 5G1.3(b) (2002) states that if the prison term for another sentence resulting from conduct taken into account in formulating the offense level in the instant case has already been discharged by the time of sentencing, "a downward departure is not prohibited," and "should be fashioned to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3 Comment. (n.7). The question presented, therefore, is whether Mr. O'Farrell's failure to move for a downward departure on the basis of this application note constitutes deficient performance that prejudiced the petitioner.

The Court concludes that the lack of a downward departure motion in this case did not amount to a violation of the petitioner's Sixth Amendment rights for several reasons. First, a subsequent clarifying amendment to the Sentencing Guidelines makes plain that a downward departure would be appropriate only if the prior offense that resulted in the custody sentence "was the basis for an increase in the offense level for the instant offense." U.S.S.G. Appx. C, Amend. 660 (November 1, 2003). Although the state sentence for which the defendant seeks credit resulted from a crime that was part of the present federal conspiracy, the loss amount in the state case was $445 and therefore could not have been the basis for an increase in the offense level in the present case, particularly given the probation officer's findings of loss amounts in excess of $70,000, and the Court's willingness to abide by the parties' stipulation to apply a loss of amount of less than

$70,000. Although Amendment 660 became effective after the petitioner's sentence in this case, it was a clarifying amendment and must be "given substantial weight in determining the meaning of the existing guideline." *United States v. Luster*, 889 F.2d. 1523, 1529 (6th Cir. 1989) (cited in *United States v. DeCarlo*, 434 F.3d. 447, 458 (6th Cir. 2006)).

Moreover, at most, the guideline commentary merely provided the petitioner with grounds for a downward departure motion. Although no such motion was made, the Court decidedly would not have granted one on these grounds. The Court already had applied considerable leniency in accepting the parties' offense level calculations over those recommended by the probation department. The Court then sentenced the defendant to the maximum amount permitted under the plea agreement. Therefore, the Court concludes that even if defense counsel's failure to file a downward departure motion on the basis of application note 7 to U.S.S.G. § 5G1.3(b) amounted to deficient performance, no prejudice resulted. Consequently, the petitioner has not establish ineffective assistance of counsel because she has not proved both prongs of the *Strickland* test.

IV.

The Court finds that the petitioner has not established that the sentence in this case was imposed in violation of the Constitution or laws of the United States. The petitioner, therefore, is not entitled to relief under 28 U.S.C. § 2255.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate sentence [dkt. #65] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 25, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 25, 2007.

                                        s/Felicia M. Moses
                                        FELICIA M. MOSES